**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
CIVIL NO. 5:10CV64-RLV-DSC**

| | |
|---|---|
| **DONNA LYNN MECIMORE,**     )<br>            Plaintiff,            )<br>                                         )<br>            vs.                        )<br>                                         )<br>**MICHAEL J. ASTRUE,**         )<br>**Commissioner of Social**     )<br>**Security Administration,**   )<br>            Defendant.           )<br>                                         ) | **MEMORANDUM AND RECOMMENDATION** |

**THIS MATTER** is before the Court on Plaintiff's "Motion for Summary Judgment" (document #9) and "Brief (in Support)" (document #9-1), both filed October 14, 2010; and the Defendant's "Motion for Judgment on the Pleadings" (document #10) and "Memorandum in Support... " (document #10-1), both filed December 9, 2010.   This case has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1), and these Motions are now ripe for disposition.

Having considered the written arguments, administrative record, and applicable authority, the undersigned will respectfully recommend that Plaintiff's Motion for Summary Judgment be denied; that Defendant's Motion for Judgment on the Pleadings be granted; and that the Commissioner's decision be affirmed.

**I. PROCEDURAL HISTORY**

Plaintiff filed her application for a period of disability, disability insurance benefits ("DIB"), and Supplemental Security Income ("SSI") on November 16, 2006, alleging that she became disabled on January 1, 2004. Plaintiff's application was denied initially and on reconsideration, and

a hearing was held on May 6, 2009. (Tr. 19-58).

On July 24, 2009, the Administrative Law Judge ("ALJ") issued a decision denying Plaintiff benefits. (Tr.6-17). In his decision, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date. The ALJ also found that Plaintiff suffered lumbar and cervical strain, degenerative disc disease, fibromyalgia, a history of left knee arthroplasty, right-sided carpal tunnel syndrome, major depressive disorder, and anxiety, which were severe impairments within the meaning of the regulations, but did not meet or equal any listing in 20 C.F.R. Pt. 404, Subpt. P, App. 1. The ALJ found that Plaintiff retained the Residual Functional Capacity ("RFC")[1] to perform sedentary work[2] limited to routine and repetitive tasks, not requiring more than frequent use of the hands, avoiding exposure to loud noises and hazardous environments outside the home such as heavy machinery, and requiring no public contact and only occasional contact with co-workers. (Tr. 13). The ALJ also found that Plaintiff could not perform her past relevant work, and that she was a "younger individual," as that term is defined for Social Security purposes, with a high school education.[3]

The ALJ then correctly shifted the burden to the Secretary to show the existence of other jobs in the national economy that Plaintiff could perform. In response to a hypothetical that factored

---

[1] The Social Security Regulations define "Residual Functional Capacity" as "what [a claimant] can still do despite his limitations." 20 C.F.R. § 404.1545(a). The Commissioner is required to "first assess the nature and extent of [the claimant's] physical limitations and then determine [the claimant's] Residual Functional Capacity for work activity on a regular and continuing basis." 20 C.F.R. § 404.1545(b).

[2] "Sedentary" work is defined in 20 C.F.R. § 404.1567(a) as follows:

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

[3] The record shows that Plaintiff was 43 years-old on the date of the ALJ's decision.

in the above limitations, the Vocational Expert identified three sedentary jobs (machine tender, inspector, and final assembler) that the Plaintiff could perform and stated that 5,000 of these jobs existed in North Carolina. Accordingly, the Vocational Expert's testimony provided substantial evidence that there were a significant number of jobs in the national economy that the Plaintiff could perform. (Tr. 17.)

By notice dated March 15, 2010, the Appeals Council denied Plaintiff's request for further administrative review.

Plaintiff filed the present action on May 17, 2010. Plaintiff assigns error to the ALJ's evaluations of the opinions of her treating psychiatrist, Dr. Rudy A. Santoso, and her family physician, Dr. John Wilkinson. Plaintiff also assigns error to the ALJ's evaluation of the severity of her mental impairments, his conclusion that none of her impairments, individually or in combination, met or equaled any listing in 20 C.F.R. Pt. 404, Subpt. P, App. 1, and his evaluation of Plaintiff's subjective complaints. See Plaintiff's "Brief in Support ..." at 12-22 (document #9-1). The parties' cross dispositive Motions are ripe for disposition.

## II. STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision, Richardson v. Perales, 402 U.S. 389, 390, 401 (1971); and (2) whether the Commissioner applied the correct legal standards. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); see also Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam). The District Court does not review a final decision of the Commissioner de novo. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986); King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979); Blalock v.

3

Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

As the Social Security Act provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). In Smith v. Heckler, 782 F.2d 1176, 1179 (4th Cir. 1986), quoting Richardson v. Perales, 402 U.S. 389, 401 (1971), the Fourth Circuit defined "substantial evidence" thus:

> Substantial evidence has been defined as being "more than a scintilla and do[ing] more than creat[ing] a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

See also Seacrist v. Weinberger, 538 F.2d 1054, 1056-57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistencies in the medical evidence").

The Fourth Circuit has long emphasized that it is not for a reviewing court to weigh the evidence again, nor to substitute its judgment for that of the Commissioner, assuming the Commissioner's final decision is supported by substantial evidence. Hays v. Sullivan, 907 F.2d at 1456 (4th Cir. 1990); see also Smith v. Schweiker, 795 F.2d at 345; and Blalock v. Richardson, 483 F.2d at 775. Indeed, this is true even if the reviewing court disagrees with the outcome – so long as there is "substantial evidence" in the record to support the final decision below. Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

### III. DISCUSSION OF CLAIM

The question before the ALJ was whether at any time the Plaintiff became "disabled," as that term is defined for Social Security purposes.[4] Plaintiff's first assignment of error concerns the

---

[4] Under the Social Security Act, 42 U.S.C. § 301, et seq., the term "disability" is defined as an:

4

ALJ's evaluation of the opinions of her treating physicians. The Fourth Circuit has held that a treating physician's opinion need not be afforded controlling weight. Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992).[5] A treating physician's opinion on the nature and severity of the alleged impairment is entitled to controlling weight only if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record. See 20 C.F.R. §§ 404.1527(d)(2) (2002); and Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001). Therefore, "[b]y negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Mastro, 270 F.3d. at 178, citing Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996). A treating source's opinion that rests upon a claimant's less-than-candid subjective complaints is entitled to minimal probative value. See Johnson v. Barnhart, 434 F.3d 650, 657 (4th Cir. 2005). Indeed, "[a]n ALJ's determination as to the weight to be assigned to a medical opinion will generally not be disturbed absent some indication that the ALJ has dredged up 'specious inconsistencies' or has not given good reason for the weight afforded a particular opinion." Christian v. Apfel, No. 98-1673, 168 F.3d 481, 1998 WL 911720, at *2 (4th Cir. Dec. 31, 1998) (per curiam, unpublished) (quoting Scivally v. Sullivan, 966 F.2d 1070, 1076-77 (7th Cir. 1992)) (internal citation omitted).

---

inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . .
Pass v. Chater, 65 F. 3d 1200, 1203 (4th Cir. 1995).

[5]Plaintiff cites in part to an earlier standard of review that was overruled in Sullivan, supra, following an adoption of new rules by the Administration. See Document #9-1 at 13-14, citing Coffman v. Bowen, 829 F.2d 514, 517-518 (4th Cir. 1987) (treating physician's opinion entitled to "great weight," and can only be rejected if there is persuasive evidence to the contrary in the record); Millner v. Schweiker, 725 F.2d 243, 245-246 (4th Cir. 1984) (same).

Dr. Santoso's May 4, 2009 disability opinion states in its entirety that "The above named person is suffering from chronic mental illness and medical problems and she is unable to work." (Tr. 387). Similarly on May 5, 2009, Dr. Wilkinson stated that "[Plaintiff] is disabled by multiple different maladies including a mood disorder, fibromyalgia, and degenerative disc disease. I feel she is presently disabled and will be unable to work." (Tr. 388). At the outset, the Court notes that in contrast to specific findings as to the claimant's functional limitations, these statements that Plaintiff is "disabled" or "unable to work" "are not medical opinions ... but are, instead, opinions on issues reserved to the Commissioner." 20 C.F.R. §§ 404.1520(e), 416.920(e).

The ALJ rejected Dr. Santoso's opinion because it was unsupported by his own treatment notes and the other medical evidence. (Tr. 14). Under the Regulations, the ALJ is permitted to reject opinions that are not well supported or that are inconsistent with other evidence. See 20 C.F.R. §§ 404.1527(c)(3), (4), 416.927(c)(3), (4). Here, Dr. Santoso cited to no evidence whatsoever to support his opinions. The treatment notes from Dr. Santoso and affiliated counselors disclose numerous inconsistencies with Plaintiff's claim. Plaintiff persisted in looking for work. (Tr. 206, 217, 232, 237). It appears that car problems were the primary impediment to Plaintiff seeking employment, rather than her alleged impairments. (Tr. 232). Despite Dr. Santoso's present opinion, Katrice Rankin–her regular counselor at Dr. Santoso's clinic–instructed Plaintiff on September 6, 2006, to seek employment to reduce her stress. (Tr. 228). She received at least one Global Assessment of Functioning score inconsistent with disability. (Tr. 213). See Diagnostic and Statistical Manual of Mental Disorders ("DSM IV") 32-34 (4th ed. 2000). She supposedly became disabled the very day after she was terminated from prior employment, despite the fact that she subsequently collected employment benefits. (Tr. 218, 221). Plaintiff typically experienced exacerbations of her mental impairments only in the presence of environmental stressors such as

family issues and money problems. (E.g., Tr. 225, 226, 228, 246, 343, 349, 350, 355, 356, 362, 363, 366, 367). Her own providers noted that, at times, Plaintiff's problems were more "environmental" than psychiatric. (Tr. 367, 370).

Plaintiff's mental status exams and other observations were generally normal, except during periods of intense familial turmoil. (Tr. 227, 230, 235, 247, 345, 348, 357, 360, 362, 364, 369, 370, 371, 372). Notably, Plaintiff was "healthy and happy" on July 20, 2006, and wanted to begin weaning off medication. (Tr. 230). On October 18, 2006, Plaintiff was "doing great" and had experienced very substantial improvement. (Tr. 227). On October 19, 2007, Dr. Santoso thought Plaintiff was "stable" and "doing fine" on her then-current medications. (Tr. 362). As recently as August 15, 2008, Plaintiff was more motivated; was feeling and sleeping better; and did not need one of her medications because she was not experiencing panic attacks. (Tr. 345). At other times, Plaintiff's reports of anxiety were inconsistent with her actual presentation on exam. (Tr. 248, 343, 358).

The ALJ permissibly relied upon the opinions of Dr. W.W. Albertson, a state-agency psychologist, (Tr. 273-286, 287-290), and Dr. Bonny Gregory, a state-agency psychiatrist, (Tr. 323). See 20 C.F.R. §§ 404.1527(f), 416.927(f); accord Mastro, 270 F.3d at 178. Dr. Albertson opined that despite Plaintiff's impairments, she could understand and remember simple instructions; maintain the level of attention and concentration required to perform simple, routine, repetitive tasks in a low stress setting; and interact appropriately with coworkers and the general public; but had "some" difficulty adapting to routine changes. (Tr. 289). In sum, he opined that Plaintiff could perform "[simple, routine, repetitive tasks] in a low stress environment with limited interpersonal demands." (Tr. 289). Dr. Gregory, after reviewing additional evidence, concurred with Dr. Albertson's assessment. (Tr. 323). Dr. Albertson's detailed opinions, (Tr. 273-90, particularly Tr.

7

289-290), stand in stark contrast to Dr. Santoso's simple assertion of disability, (Tr. 387).

Similarly, the ALJ rejected Dr. Wilkinson's conclusory opinion because it was not supported by the existing medical evidence. (Tr. 15). The ALJ specifically summarized the medical evidence pertaining to Dr. Wilkinson's treatment of Plaintiff. (Tr. 15). He found that Dr. Wilkinson's notes reflected that Plaintiff's symptoms were "reasonably managed with conservative treatment." (Tr. 15). He also noted that Plaintiff's "physical examinations [were] within normal limits." (Tr. 15). Substantial evidence supports both of these findings. (Tr. 252-253, 256, 259, 264, 268-269, 295, 297, 298, 328-329, 335-337, 375). Dr. Wilkinson recorded that Gabapentin was effective in addressing Plaintiff's fibromyalgia-related pains. (Tr. 328). Despite Dr. Santoso's apparent belief that Dr. Dennis Payne had diagnosed Plaintiff with fibromyalgia, Dr. Payne's own records reflect that he was uncertain why Plaintiff experienced pain but that he did not think she had rheumatoid arthritis. (Tr. 335-337). He opined that he was "unsure as to the cause of her symptoms" and did "not see objective findings in her history or exam supporting the presence of any inflammatory or degenerative rheumatic disease." With respect to fibromyalgia, Dr. Payne explicitly recorded that he was unable to detect any "tender points." (Tr. 337). To support a diagnosis of fibromyalgia, an individual must manifest tenderness in at least 11 of 18 specific trigger points. See Green-Younger v. Barnhart, 335 F.3d 99, 107 (2d Cir. 2003) (surveying material). Dr. Payne also recorded that her range of motion was preserved and that her muscles manifested neither weakness nor atrophy. (Tr. 337). Finally, the ALJ also considered--but placed little weight upon--the RFC assessments of the state-agency physicians, Dr. Margaret Parrish and Dr. Perry Caviness, both of whom opined that Plaintiff could perform the exertional demands of medium work. (Tr. 300-307, 315-322). Mastro, 270 F.3d at 178.

Accordingly, because the ALJ relied upon permissible reasons for rejecting Dr. Santoso's

8

and Dr. Wilkinson's opinions, Plaintiff's assignment of error should be overruled. See Craig, 76 F.3d at 590; Mastro, 270 F.3d at 178.

Next, Plaintiff contends that the ALJ erred in evaluating her mental impairments Plaintiff contends that certain medical evidence suggests that she may have suffered additional limitations with respect to her ability to perform unskilled work. See 20 C.F.R. §§ 404.1521(b), 416.921(b) (listing basic work activities); SSR 85-15, The Medical-Vocational Rules as a Framework for Evaluating Solely Nonexertional Impairments (1985), available at 1985 WL 56857, at *4 ("The basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting").

However, Plaintiff has failed to point to any affirmative evidence of limitations beyond those found by the ALJ. Instead, she points to a hodgepodge of isolated observations regarding her symptoms on particular occasions. As explained above, however, the ALJ relied upon substantial evidence in support of the RFC he ultimately assessed, both in the form of medical records (Tr. 252-253, 256, 259, 264, 268, 295, 298, 328-329, 335-337, 375), and medical opinion evidence (Tr. 273-290, 323). To the extent that Plaintiff suggests that the ALJ must discuss every piece of evidence in a voluminous record, she is mistaken. The ALJ must consider the entire record, see 20 C.F.R. § 416.912(b) including medical opinions, see id. §§ 416.913, 416.927. Nevertheless, the ALJ need not laboriously regurgitate its components, which are of course themselves subject to scrutiny on judicial review. See Villano v. Astrue, 556 F.3d 558, 562 (7th Cir. 2009); Frantz v. Astrue, 509 F.3d 1299, 1303 (10th Cir. 2007); Dyer v. Barnhart, 395 F.3d 1206, 1211 (11th Cir. 2005); Miles v. Harris, 645 F.2d 122, 124 (2d Cir. 1981).

9

More fundamentally, Plaintiff's argument misapprehends the nature of the inquiry. Diagnosis of a particular condition or recognition of certain symptoms do not establish disability. See 20 C.F.R. §§ 404.1520, 404.1525(d), 404.1545, 416.920, 416.925(d), 416.945; accord Craig, 76 F.3d at 595. Rather, the important issue is the functional limitations stemming from an individual's impairments. See 20 C.F.R. §§ 404.1529, 404.1545, 416.929, 416.945; accord Craig, 76 F.3d at 595; see also Dargan o/b/o Dargan v. Chater, No. 94-2029, 54 F.3d 772, 1995 WL 280837, at *2 (4th Cir. May 11, 1995) (unpublished) ("Specifically, the purported new evidence does not show *how* and to what extent [the plaintiff's] abilities, activities and development are curtailed."). Functional limitations are accounted for when an ALJ evaluates RFC. See 20 C.F.R. §§ 404.1545, 416.945.

The ALJ must craft an RFC assessment between steps three and four of the five-step sequential evaluation process. See 20 C.F.R. §§ 404.1520(e), 404.1545, 416.920(e), 416.945; Clarification of Rules Involving [RFC] Assessment, 68 Fed. Reg. 51,153-01, 51155 (Aug. 26, 2003).[6] RFC is defined as "the most [an individual] can still do despite [his or her] limitations," 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1), and thus should account for all of an individual's medically determinable impairments, id. §§ 404.1545(a)(2), 416.945(a)(2). RFC must be "based on all the relevant evidence in [a claimant's] case record" and must encompass both medical and nonmedical evidence. Id. §§ 404.1545(b), 416.945(b) (delineating broad range of evidence to be considered) §§ 404.1545(a)(1), (3), 416.945(a)(1), (3) (mandating consideration of all record evidence in RFC context). In a case resolved at the administrative hearing level, the ALJ is

---

[6] Courts have recognized, following this clarification, that claimants bear the burden of proof with respect to RFC, regardless of whether a claim is resolved at step four or step five of the sequential evaluation process. Poupore v. Astrue, 566 F.3d 303, 306-07 (2d Cir. 2009) (recognizing that claimant always bears burden of proving RFC); Goff v. Barnhart, 421 F.3d 785, 794 (8th Cir. 2005) (same); accord Morgan v. Barnhart, 142 F. App'x 716, 720 & n.3 (4th Cir. 2005) (unpublished).

10

responsible for the assessment of RFC. See id. §§ 404.1546(c), 416.946(c). Indeed, formulation of RFC is specifically reserved to the Commissioner, though valid opinions from medical sources should be considered. Id. §§ 404.1545(e)(2)-(3), 416.945(e)(2)-(3); accord Morgan, 142 F. App'x at 722-23.

Here, Plaintiff has not adduced any evidence that she experiences greater limitations than those assessed by the ALJ. (Tr. 13). As discussed above, the opinions she submitted from Dr. Wilkinson and Dr. Santoso are void of any RFC assessment or attempt to set forth any functional limitations. Accordingly, the ALJ properly relied upon the RFC assessments of Dr. Albertson and Dr. Gregory. See 20 C.F.R. §§ 404.1527(f), 416.927(f). There is no opinion evidence supporting more severe mental limitations.

Plaintiff also complains that the ALJ neglected to evaluate her ability to respond appropriately to supervision, coworkers, and customary work pressures. In fact, the ALJ did assess an RFC limiting Plaintiff to routine and repetitive tasks, no public contact, and only occasional contact with coworkers precisely because of Plaintiff's limitations in these respects. (Tr. 13). The ALJ also explicitly adopted the opinions of Dr. Albertson and Dr. Gregory, who fully addressed these issues. (Tr. 15, 289). Finally, the ALJ engaged in the special analysis for evaluating mental impairments, as mandated by 20 C.F.R. §§ 404.1520a and 416.920a. In so doing, the ALJ made specific findings regarding Plaintiff's activities of daily living, social functioning, and ability to maintain concentration, persistence, or pace. (Tr. 12). The ALJ fully accounted for Plaintiff's mental impairments.

In her third assignment of error, Plaintiff contends that the ALJ erred in finding that she did not meet a listing. More specifically, Plaintiff argues that she meets either § 12.04 or § 12.06 of appendix 1 of 20 C.F.R. pt. 404, subpt. P. A claimant bears the burden of demonstrating satisfaction

of a listing. Byrd v. Apfel, No. 98-1781, 168 F.3d 481, 1998 WL 911718, at *4-5 (4th Cir. Dec. 31, 1998) (unpublished).

First, Plaintiff claims that she met the criteria of § 12.04, which governs affective disorders. See 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.04. Plaintiff had to prove (1) an impairment involving (2) the medically documented persistence of several different depressive-disorder related symptoms that (3) resulted in marked limitations in at least two of four different functional categories. See id. § 12.04A and B.

With respect to § 12.04A, Plaintiff has not set forth four persistent qualifying symptoms, as required by § 12.04A(1)(a)-(I). As explained above, Plaintiff's symptoms were intermittent; improvement was substantial, and her condition depended heavily upon environmental circumstances. (Tr. 225, 226, 228, 246, 343, 349, 350, 355, 356, 362, 363, 366, 367). Even if the Court accepted Plaintiff's factual characterizations, her challenge still fails as a matter of law because she cannot satisfy the B or C criteria of § 12.04, as required. See 20 C.F.R. pt. 404, subpt. P., app. 1, § 12.04. ("The required level of severity for these disorders is met when the requirements in both A and B are satisfied, or when the requirements in C are satisfied." (emphasis added)).

With respect to § 12.04B, Plaintiff has not met her burden of proving any marked limitation in two of the enumerated functional categories-- activities of daily living, social functioning, or maintaining concentration, persistence, or pace or that she suffered from a marked restriction in one of those categories as well as repeated episodes in the fourth category – decompensation of extended duration. See 20 C.F.R. pt. 404, subpt. p, app. 1, § 12.04(B)(1)-(4). The ALJ found that Plaintiff suffered mild limitation with respect to performing activities of daily living and moderate limitations with respect to social functioning and maintaining concentration, persistence, or pace. (Tr. 12). These findings mirror Dr. Albertson's psychiatric review technique form (Tr. 283), and

are thus supported by substantial evidence of record. 20 C.F.R. §§ 404.1527(f), 416.927(f); accord Mastro, 270 F.3d at 178. The record does not contain evidence of the sort of near-total incapacitation covered under § 12.04C.

Next, Plaintiff contends that the ALJ improperly found that her condition did not meet or equal the listing for anxiety disorders, § 12.06. To qualify under § 12.06, an individual must meet the criteria of 12.06A and 12.06B or the requirements of both 12.06A and 12.06C. Plaintiff has not satisfied either 12.06B or 12.06C. With respect to § 12.06B, Plaintiff has not shown any marked limitation in two of the enumerated categories for precisely the same reasons she failed to satisfy 12.04B. See 20 C.F.R. pt. 404, subpt. p, app. 1, § 12.06B(1)-(4). Meanwhile, § 12.06C requires an individual to substantiate a "complete inability to function independently outside the area of one's home." There is no evidence supporting such a drastic assertion.

To satisfy either the criteria of either § 12.04 or § 12.06, Plaintiff would also have to show marked restrictions in two of the categories of daily living, social functioning, or concentration, persistence, or pace or marked restrictions in one such category as well as repeated episodes of decompensation. 20 C.F.R. pt. 404, subpt. P, app. 1, §§ 12.04B, 12.06B. Because she has not done so, this assignment of error must fail as well.

Finally, Plaintiff argues that the ALJ's credibility assessment is not supported by substantial evidence. The determination of whether a person is disabled by nonexertional pain or other symptoms is a two-step process. "First, there must be objective medical evidence showing the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged." Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996), citing 20 C.F.R. § 416.929(b); and § 404.1529(b); 42 U.S.C. § 423(d)(5)(A). If there is such evidence, then the ALJ must evaluate "the

13

intensity and persistence of the claimant's pain, and the extent to which it affects [his] ability to work." Id. at 595, citing 20 C.F.R. § 416.929(c)(1); and § 404.1529(c)(1). The regulations provide that this evaluation must take into account:

> not only the claimant's statements about his or her pain, but also "all the available evidence," including the claimant's medical history, medical signs, and laboratory findings; any objective medical evidence of pain (such as evidence of reduced joint motion, muscle spasms, deteriorating tissues, redness, etc.); and any other evidence relevant to the severity of the impairment, such as evidence of the claimant's daily activities, specific descriptions of the pain, and any medical treatment taken to alleviate it.

Craig, 76 F.3d at 595 (citations omitted).

The record contains evidence of Plaintiff's lumbar and cervical strain, degenerative disc disease, fibromyalgia, a history of left knee arthroplasty, right-sided carpal tunnel syndrome, major depressive disorder, and anxiety– which could be expected to produce some of the pain claimed by Plaintiff. Accordingly, the ALJ found Plaintiff to have met the first prong of the test. The ALJ then determined, however, that Plaintiff's subjective complaints were not fully credible, as they were not consistent with the objective evidence in the record.

The ALJ provided several justifications for discounting Plaintiff's subjective allegations. First, and as Plaintiff acknowledges, the ALJ found it significant that Plaintiff was looking for work at a time when she was allegedly disabled. (Tr. 14). Plaintiff repeatedly communicated to her counselors her apparent belief that she was fit to work and was actively seeking employment. (Tr. 206, 217, 232, 237). At one point, transportation issues were apparently the primary barrier to her reentry into the workforce. (Tr. 232). As the ALJ noted, on another occasion, her main concern was that a chipped tooth might damage her job prospects. (Tr. 14, 205). The ALJ further found that Plaintiff "continued" to look for work for more than a year after the alleged onset date. (Tr. 14). The record shows that at one point, Plaintiff's own counselor suggested that she return to work. (Tr.

14

228). And, despite her allegation that she became disabled on December 31, 2003, the record reflects that she lost her job on December 31, 2003, and thereafter received unemployment benefits, evidence that supports the ALJ's view of her employment search. (Tr. 218, 221). Plaintiff simply did not regard herself as disabled. Meanwhile, her counselors did not attempt to dissuade her search for employment, but rather appear to have encouraged her efforts.

Plaintiff also objects to the ALJ characterizing the bulk of her emotional difficulties as related to family or environmental issues. (Tr. 14). As discussed above, however, the record reflects substantial improvement in Plaintiff's condition (Tr. 227, 230, 235, 247, 345, 348, 357, 360, 362, 364, 369, 370, 371, 372) except when family crises exacerbated her recognized impairments (Tr. 225, 226, 228, 246, 343, 349, 350, 355, 356, 362, 363, 366, 367). Plaintiff's own providers directly endorsed such a view at times. (Tr. 367, 370).

Plaintiff objects to the ALJ's decision not to analyze specifically each of the various medications she took to treat her symptoms. Yet, the ALJ found that medications, therapy, and conservative treatment were generally effective, (Tr. 14-15) a conclusion supported by the record, (Tr. 227, 230, 362, 372, 328-329). Plaintiff was also recalcitrant to engage in therapy requiring significant effort. (Tr. 295). See Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986) ("[i]f a symptom can be reasonably controlled by medication or treatment, it is not disabling"); and Purdham v. Celebrezze, 349 F.2d 828, 830 (4th Cir. 1965) (finding that symptoms that can be controlled by medication are not disabling).

Finally, the ALJ reasonably found that the medical records did not support the degree of impairment alleged. As explained above, this finding is also supported by the record with respect to both Plaintiff's alleged mental impairments (Tr. 227, 230, 235, 247, 345, 348, 357, 360, 362, 364, 369, 370, 371, 372), as well as her physical impairments, (Tr. 252-253, 256, 259, 264, 268-

15

269, 295, 297, 298, 328-329, 335-337, 375).

Although the medical records establish that the Plaintiff experienced pain and mental and emotional difficulties to some extent or degree, as the Fourth Circuit has noted, it is the ALJ's responsibility, not the Court's, "to reconcile inconsistencies in the medical evidence." Seacrist v. Weinberger, 538 F.2d 1054, 1056-57 (4th Cir. 1976). Moreover, the facts found by the ALJ clearly support the ultimate conclusion that Plaintiff suffered from, but was not disabled from working, by her combination of impairments.

Simply put, "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the Secretary (or the Secretary's designate, the ALJ)." Mickles v. Shalala, 29 F.3d 918, 923 (4th Cir. 1994)(citing Simmons v. Bowen, 834 F.2d 635, 640 (7th Cir. 1987)). This is precisely such a case, as it contains substantial evidence to support the ALJ's treatment of the medical records and Plaintiff's credibility and his ultimate determination that Plaintiff was not disabled.

## IV. RECOMMENDATIONS

**FOR THE FOREGOING REASONS,** the undersigned respectfully recommends that Plaintiff's "Motion for Summary Judgment" (document #9) be **DENIED**; that Defendant's "Motion for Judgment on the Pleadings" (document #10) be **GRANTED**; and that the Commissioner's determination be **AFFIRMED**.

## V. NOTICE OF APPEAL RIGHTS

The parties are hereby advised that, pursuant to 28 U.S.C. §636(b)(1)(c), written objections to the proposed findings of fact and conclusions of law and the recommendation contained in this Memorandum must be filed within fourteen (14) days after service of same. Failure to file

objections to this Memorandum with the District Court constitutes a waiver of the right to de novo review by the District Judge. Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005); Wells v. Shriners Hosp., 109 F.3d 198, 201 (4th Cir. 1997); Snyder v. Ridenour, 889 F.2d 1363, 1365 (4th Cir. 1989). Moreover, failure to file timely objections will also preclude the parties from raising such objections on appeal. Thomas v. Arn, 474 U.S. 140, 147 (1985); Diamond, 416 F.3d at 316; Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003); Wells, 109 F.3d at 201; Wright v. Collins, 766 F.2d 841, 845-46 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

The Clerk is directed to send copies of this Memorandum and Recommendation to counsel for the parties; and to the Honorable Richard L. Voorhees.

**SO RECOMMENDED AND ORDERED**.

Signed: December 10, 2010

David S. Cayer
United States Magistrate Judge